Blodgett *vs.* Bartlett.

Foster Blodgett, superintendent, plaintiff in error, *vs.* Isaac E. Bartlett, defendant in error.

1. Where a railroad train was stopped at a station, but somewhat away from its usual place of stopping at that station, and where there was not good ground for getting off, and a passenger, thinking the train would be moved up to the usual place, failed to get off, as he had intended, and after the train had left the station and was fairly on its way to its next stopping place, the passenger himself seized the bell-rope, rang the engine bell, and took his position on the lower step of the platform to get off, and the engineer having answered the bell, as the cars were coming to a stop, but before they were stopped, the passenger, deeming the motion slow enough for safety, undertook to step off, but just as he was stepping he was, by a sudden jerk of the cars,

thrown down, and his arm crushed by one of the wheels of the car passing over it:

*Held*, That the conduct of the passenger in himself ringing the bell, taking his position on the step, and undertaking to step off whilst the cars were still in motion, was a want of ordinary care, and showed gross negligence on the part of such passenger.

2. It was error in the Court, under the facts, to charge the jury in effect, that the road would be liable, if, at the time of his attempting to step off, the cars were moving so slowly as that he thought it was safe then to step off.

Railroads. Passengers. Negligence. Before Judge Harvey. Gordon Superior Court. February Adjourned Term, 1873.

Bartlett brought case against Blodgett, as superintendent of the Western and Atlantic Railroad, for $25,000 00 damages, alleged to have been sustained by him on account of the negligent conduct of the defendant in his avocation as a common carrier. The declaration charged that the plaintiff embarked on the cars of defendant at Atlanta, for the purpose of being transported to Calhoun, a station on the line of defendant's road; that said cars failed to stop at the usual station at Calhoun, whereby plaintiff was forced to disembark at an unsafe point, and in attempting to get off the train at said improper place, through no fault of his, his right arm and hand were crushed to such an extent as to render amputation necessary.

The defendant pleaded the general issue, and that if the plaintiff was injured, as alleged in his said declaration, it resulted from his own negligence.

The plaintiff testified substantially as follows: Lost his arm in consequence of an injury received on the Western and Atlantic Railroad on May 7th, 1870. He got on the train at Atlanta for the purpose of going to Calhoun. When the train reached the latter point it did not stop at the usual place. He looked out, but did not at first know that he was at Calhoun. The train stopped below the south end of the depot. The car in which he was, was below the south end of the hotel. Has since stepped the ground. The place where he was stopped was one hundred and fifteen steps below the depot.

The ground at that point was very rough, and it would have been exceedingly difficult there to have disembarked from the train.   On the west side there were switches and a ditch, probably two and a half feet deep.   On the east side there was a steep bank and a ditch.   The ends of the cross-ties were rough and above the surface, and about eighteen inches apart.   Thought the train would pull up to the plank platform at the depot, the usual place of discharging passengers.   There had been a railroad pic-nic at Marietta, and on account of the large number of persons on board, the train was longer than usual.   He was in the third or fourth car from the engine.   When the train stopped he came out of the cars and stood on the platform.   Saw a lady get off from a car below the one he was on ; two gentlemen with a light assisted her.   The train remained stationary one and a half or two minutes and then moved off rapidly.   It passed the depot, and plaintiff perceived it was not going to stop.   When it was about opposite Boaz & Barrett's store-house, he reached up, seized the bell rope and rang the bell ; the engine blew on the brakes and the train began to slack up.   It had run some two or three hundred yards after he had rung the bell, and was moving very slowly, when he got down on the steps, his left foot on the lower step, and was holding on to the iron railing of the steps with his left hand.   The train had not stopped, but he thought it safe to get off.   Just as he attempted to step off with his right foot, the train gave a sudden and violent jerk, which threw him off his balance, causing him to fall on his left side with his right arm across the track ; thought from the suddenness of the jerk that the engineer had pulled open the throttle of his engine.   The trucks of the car passed over his hand diagonally.   He pulled it off the track and got up.   As the rear car passed him, a train hand asked him if he was hurt; replied that he was ruined.   The train hand jumped off and came to him.   Had been, during his life, a railroad conductor, and knew it was hazardous to get off a train when in motion.   Was not drunk ; had only

taken three drinks on that day.    The accident happened about midnight; it was very dark.

The remainder of the plaintiff's testimony relates to the extent of his damages, etc.    He was corroborated as to the unusual point at which the train stopped, upon its arrival at Calhoun, and as to the time it remained there, by several witnesses.

The evidence for the defendant tended to show that the train stopped at the usual point at Calhoun, remained the usual length of time, and moved off in the ordinary manner. Also, that the plaintiff was drunk.

Amongst other things, the Court charged the jury "that if the train carried the plaintiff beyond his point of destination, he should have waited until the train should have been stopped, or so nearly so as to make it apparently safe, and then get off, or have suffered himself to be carried to the next station, and then have sued for damages from loss of time, and for the inconvenience, labor and expense of traveling back."

The jury returned a verdict for the plaintiff for $4,000 00. The defendant moved for a new trial, because the verdict was contrary to the law and the evidence, and because of error in the aforesaid charge.    The motion was overruled, and the defendant excepted.

J. A. GLENN; D. A. WALKER; J. C. FAIN; J. E. SHUMATE, for plaintiff in error.

W. H. DABNEY; J. A. W. JOHNSON, for defendant.

McCAY, Judge.

1. Assuming that the employees of the Western and Atlantic Railroad were in fault in not stopping the cars at a suitable place for the plaintiff below to get off, it does not at all follow that the State is liable for the damage which was subsequently inflicted.    A prudent man, under the circumstances, would have sought the conductor, or gone on to the

next station, and if any injury came from this he would have his right of action. But the plaintiff took the affair into his own hands. He rang the bell to the driver to stop the train. This he had no right to do; at least, only in very extraordinary cases has a passenger a right to do this. The rope is not there for the use of passengers, but to enable the conductor to communicate with the engineer. So dangerous a thing as a train of cars is not to be at the mercy of a passenger. The public interest, as well as the rights of the railroad company, require that the bell rope shall be sacred to the touch only of the proper officer. When the bell was rung, and the driver commenced obeying it, the plaintiff had no business on the platform; at least he was there at his own risk, till the cars stopped. The platform is not a safe place to be, and it is not made to ride on; still more careless was he to go down upon the step, where any sudden jar might throw him off. But, in our judgment, it was perfect recklessness to attempt to jump off before the cars stopped, especially as the signal to stop did not come from the proper person. That at the moment there was a jerk of the cars, does not, we think, help the case. Such jerks in stopping must occur, and when he undertook to take control of the train, and leap from it in the dark, he should have thought of this liability. That he thought the speed was sufficiently slackened, is his misfortune. And it seems to us absurd to say that a railroad company, in stopping its cars, is bound so to stop them as to avoid danger to passengers who undertake to get off before the stoppage is complete. No man has a right to assume that it is safe to get off a train that is running at any speed, since, until it is entirely stopped, there may or may not be changes of motion, jerks and other irregularities, dangerous to one in the act of getting off.

2. We think the Court erred in charging the jury that the road was liable if the cars had got so slow as to make it apparently safe. It was not an open question under the evidence. The cars, according to the plaintiff's own testimony, were still in motion, and so rapidly that they did not finally stop until the

rear of the train, some eight or ten cars' lengths from him, had gone considerably past him.   No man of ordinary prudence would have done such a thing; it was a rash, reckless act, and displayed want of ordinary care.   We are ready to hold railroads to the strictest terms of liability, but to say that a passenger who desires to get off and who, under the circumstances, has a right to get off, may take it upon himself to ring the bell and leap off while the cars are still in motion, however slow that motion may be, is, we think, laying down a rule not only unjust in itself, but one dangerous to the public safety.

Judgment reversed.