JOHNS *v.* GEORGIA RAILWAY & ELECTRIC COMPANY.

A woman having full knowledge that a street-railway company had torn up a strip of pavement running along its track in a city street and extending on each side of her residence for more than a block, for the purpose of laying an additional track, and of the consequent depression or hole in the pavement two or three feet wide, caused the conductor of a car on which she was riding to stop it in front of her home, in the middle of a block, at a place where cars would stop for passengers; and in the daytime, in full view of the situation, and without any compulsion, urging, or emergency, she voluntarily attempted to step from the car across such opening to the pavement on the other side of it, and in doing so stepped on a paving stone or dirt, which gave way and she fell and was injured. *Held*, that she showed no right to recover against the company, and a nonsuit was proper.

Argued June 7,—Decided November 20, 1909.

Action for damages. Before Judge Pendleton. Fulton superior court. September 28, 1908.

Mrs. Josie Johns brought suit against the Georgia Railway & Electric Company to recover damages for a personal injury received from falling into a hole while alighting from a street car. On the trial the evidence introduced by the plaintiff was, in brief, as follows: She lived near the middle of a long block, and there was a point opposite the lot on which she lived where the street cars would stop for passengers to get on and off. The company was preparing to put down a double track along the street, and for

that purpose had taken up the blocks forming the pavement along a strip next to the track, leaving part of the pavement next to the sidewalk. The dirt was also being leveled so as to provide for the shifting of the old track and the laying of the new one. Thus next to the track was a lower place, or "hole" as the plaintiff termed it, which extended along the street for a block and a half on one side of plaintiff's residence and two blocks on the other side. As to the depth of the place so left open the plaintiff gave no very accurate estimate, except to say that it was very deep, and that it was a big step or jump from the step of the car. She illustrated the distance, but what the illustration showed does not appear from the testimony brought up. The distance from the car across to the remaining Belgian blocks she described as "just a good step." Another witness estimated the distance from the top of the pavement to the bottom of the excavation at fifteen inches, the distance from the step of the car to the Belgian blocks at about eighteen inches, and the width of the hole or opening in the pavement, measured from the rail, at two and one half or three feet. Where the blocks were taken up, it would leave the ends of others jutting out. The work was being done in front of where the plaintiff lived. She had seen it going on all the time. On the day of the injury in the afternoon she boarded a car at the place of stopping in the center of the block and saw the opening in the street and the piling of the rocks. On her return trip, later in the afternoon, accompanied by her daughter, as the car on which she was riding approached her residence, she signaled the conductor to stop at the middle of the block, which he did, at the same place where the car had stopped before, or within a car-length of it. She admitted having seen the width of the opening when she boarded the car, but said it seemed wider where she got off. When the car stopped she started toward the rear platform, but the conductor, who was inside the car, told her to go to the front to get off. Opposite the rear platform was a pile of rocks. She and her daughter went to the forward platform, the latter preceding and the plaintiff closely following. The daughter caught hold of the iron rod of the car and let herself down, stepping into the bottom of the hole or opening in the pavement and then stepping out on the side next to the sidewalk. The plaintiff was standing in the door, and saw her daughter leave the car. She then followed, but undertook to step across from the car

to the Belgian blocks which had not been removed, because, as she testified, she could not jump down in the hole. The rock or dirt on which she stepped gave way, and she fell and was injured. It was in the daytime, and the whole situation was plainly visible, except that she did not know that the place where she stepped would give way. There was also evidence as to the extent of the injury. At the close of the plaintiff's evidence, on motion the court granted a nonsuit, and the plaintiff excepted.

 *Reuben R. Arnold* and *Harvey Hill,* for plaintiff.

 *Rosser & Brandon* and *Colquitt & Conyers,* for defendant.

 LUMPKIN, J. (After stating the foregoing facts.) With full knowledge of the physical condition of the street in front of her house, the plaintiff voluntarily caused the conductor of the street car to stop in there, in order that she might alight. The place of stopping was not his selection; it was hers. There was no emergency compelling her to get off there, except a desire to avoid walking a block or two, if she should get off where those conditions did not exist. The conductor did not command her to leave the car or inform her that it was safe to do so. When she started toward the rear platform, beside which paving stones were piled along the street, he told her to go to the front. This was rather a warning than a command to leave the car. It was in the daytime, and the situation was plainly visible. Her daughter immediately preceded her, and alighted in safety by stepping down into the depression or "hole" caused by the removal of the paving stones from a strip of the street alongside the track for the purpose of building an additional track, and then stepping up on the pavement on the other side. There was no contention that the plaintiff did not see the entire condition of affairs. On the contrary she evidently did so, and she testified that she could not step down into the opening, and attempted to step across it, a distance which she described as a somewhat long step. The conductor, who was inside the car, had nothing to do with this decision or the effort to carry it out. When she attempted to step from the car across the opening in the pavement, she placed her foot on a paving stone or dirt, which gave way and she was hurt. She took the chance of being able to make the long step successfully, and she failed to do so in safety. Even if the defendant was not altogether faultless, nevertheless she can not recover for the results of her own conduct, with full knowledge and

in full view of the situation. Her injury was unfortunate, but she has no right to recover from the defendant. This case is not like those involving concealed danger or dangerous places known to the company and not to the passenger, or where a passenger was ordered or forced to leave a car, or where there was a defect in a street or sidewalk, which may have been previously known to a passer, but of the proximity or danger of which, by reason of darkness or other cause at the time of the injury, he was not aware. It is more like the case of *Sheats* v. *City of Rome,* 92 *Ga.* 535 (17 S. E. 922), where, although a city was negligent, after causing a ditch to be dug across a sidewalk, in leaving it open, a woman, who was aware of its existence, width, and depth, and who undertook to jump across it, or stepped into it on a rock and tried to step out, and was thus injured, was held to have no right to recover. In the case before us the plaintiff was aware at the time of leaving the car of the condition of the street. The distinction between the two classes of cases is referred to in *Macon Ry. Co.* v. *Vining,* 120 *Ga.* 511, 513 (48 S. E. 232). See also *Blodgett* v. *Bartlett,* 50 *Ga.* 353 ; *Barnett* v. *East Tenn., Va. & Ga. Ry. Co.,* 87 *Ga.* 766 (13 S. E. 904) ; *East and West R. Co.* v. *Waldrop,* 114 *Ga.* 289 (40 S. E. 268). The nonsuit was properly granted.

*Judgment affirmed. All the Justices concur.*