J. L. FULGHUM AND WIFE, LOU FULGHUM, v. ATLANTIC
COAST LINE RAILROAD COMPANY.

(Filed 10 April, 1912.)

1. Carriers of Passengers — Stations — Safety of Passengers—Flag Stations—Duty of Carriers.

A common carrier is not held to the same high degree of care to provide safe means of access to and from its stations for the use of passengers, at a flag station where the passengers alight at a crossing, and where the law does not require them to keep a depot or platform, as it is at a depot in cities and towns.

2. Same—Negligence—Questions of Law.

At a flag station, where the law does not require the carrier to provide depots or platforms at the station, and where the trains are flagged, it is not negligence for the carrier to lay a few cross-ties at intervals along its right of way for the purpose of repairing its track, where they are in plain view of the passengers and not dangerous to a person exercising ordinary care.

3. Carriers of Passengers—Flag Stations—Safe Egress—Contributory Negligence—Evidence.

Where a passenger has safely alighted in broad daylight at a flag station of the carrier, and is injured by stepping upon a cross-tie left there for the purpose of repairing the track, lying lengthwise on a slanting ditch along the roadbed, which had plainly become slippery with rain and mud, and it appears from her own testimony that she could have safely stepped over the cross-tie or have gone around it, her contributory negligence in thus acting will bar her recovery. *Hinshaw's case,* 118 N. C., 1052, cited and distinguished.

4. Nonsuit — Plaintiff's Evidence — Contributory Negligence—Questions of Law.

Where the plaintiff's own evidence discloses such contributory negligence as bars her recovery, a motion to nonsuit should be sustained.

CLARK, C. J., dissenting.

APPEAL from *Peebles, J.,* at September Term, 1911, of JOHN-STON.

This is a civil action, instituted by the plaintiffs to recover damages for personal injury, alleged to have been sustained by the *feme* plaintiff at Bagley, N. C., on 29 January, 1909. At the conclusion of the evidence introduced by the plaintiffs, on motion of defendant's counsel, there was a judgment of nonsuit. The plaintiffs appealed.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Brown.*

*F. H. Brooks, Aycock & Winston for plaintiffs.*
*Abell & Ward for defendant.*

BROWN, J. The defendant offered no evidence, and the following is an accurate statement of that offered by plaintiff:

Plaintiff was a passenger on defendant's train on the morning of 29 January, 1909, and left the train at Bagley, N. C., a flag station at which there was no regular depot, station-house, or platform. Passengers alighted generally in the vicinity of the public crossing. The conductor helped the plaintiff off the car, and placed her safely on the ground about sixty feet north of the crossing, on the right side of the track going north, from which point she started towards the crossing.

There were several cross-ties distributed along the right of way for use in repairing the road between the point where she alighted and the crossing. The plaintiff stepped on one of the cross-ties, her foot slipped on the tie, and threw her ankle out of joint.

Plaintiff testifies she knew that the tie she stepped upon was "wet, muddy, and slippery, and one end in the ditch and the other end towards the railroad, and the end towards the railroad was higher." Plaintiff says she stepped on the tie because she thought it safer to step *on it* than *over it.* Plaintiff admits she could easily have stepped over it, and further admits that she could have walked around this cross-tie without stepping on or over it.

The other testimony is that of two witnesses introduced by the plaintiff, which tends to prove that the nearest end of the

cross-tie was five or six feet from the car, and that there was ample room for the plaintiff to pass around it.

The defendant offered no evidence, and moved to nonsuit, which motion was granted.

· Upon a review of these undisputed facts, we conclude that his Honor properly sustained the motion to nonsuit: first, because there is no evidence of negligence; second, because the plaintiff's own negligence was the immediate cause of her injury.

1. Bagley is a flag station, having no depot nor station platform of any kind. Passengers are taken on the train in the vicinity of the crossing.

The defendant for purposes of repairing its track had placed a few cross-ties at intervals along its right of way; the exact number does not appear; plaintiff says several, while one of her witnesses says there was only one tie between where she alighted and the crossing. .

All the evidence shows there was a space or passway five or six feet wide between the end of the ties nearest the railroad track and the cars. There is nothing in the evidence to indicate that plaintiff could not have walked around the ties with perfect safety.

This occurrence did not happen in a town or city where a regular station is kept, but at a flag station where there was no depot or platform required by law.

We recognize fully the duty of a common carrier to provide safe means of access to and from its stations for the use of passengers (1 Hutchison on Carriers, sec. 51), but what may be considered a reasonably safe exit under conditions existing at Bagley would not be so regarded in populous towns and cities. ·

We are not prepared to hold that it was negligence upon the part of the defendant to lay a few cross-ties under such conditions at intervals along its right of way for the purpose of repairing its track, where they were in plain view of the passengers in broad daylight, and not in the least dangerous to a person exercising ordinary care.

2. It is well settled in this State that where the plaintiff's own evidence discloses such contributory negligence as bars recovery, a motion to nonsuit should be sustained. We think that is the case here.

The plaintiff was assisted from the car by the conductor and landed in a place of safety only sixty feet from the public crossing. It was broad light. She started towards the crossing. She admits that she saw the cross-tie before her. It was in an inclined position, one end elevated some and the other in a ditch. She admits that she saw that it was muddy and slippery on top.

She further states that she could have easily walked around it, or have stepped over it. In fact, a ten-year-old child could have stepped over it. Instead of taking the obviously safe course that the most ordinary prudence would have dictated, and either stepping over or walking around it, the plaintiff, with full knowledge of its condition, stepped upon the inclined tie, muddy and slippery as she knew it to be, and sprained or dislocated her ankle. As much as we may sympathize with the plaintiff in her misfortune, a bare statement of the facts is, in our opinion, sufficient to demonstrate that it was caused by her thoughtlessness.

Suppose she had been on a station platform, and had discovered a hole in front of her in time to avoid it, and had stepped in it instead of walking around it; or suppose she had seen a grease splotch ahead of her on the platform, and had deliberately walked through it, instead of stepping across or walking around it, could she have recovered damages for consequent injury? It will scarcely be contended that she could.

This is not a case like *Hinshaw's,* 118 N. C., 1052 (cited by plaintiff), where a passenger is placed suddenly in a position of danger by the carrier's negligence and required to decide at once what course to pursue. He is not expected to exercise infallible judgment, but only ordinary care, and if he does so, he is not held to the consequences of his act if he makes a mistake.

But the plaintiff was not confronted with a sudden danger. She was in a place of absolute safety. The whole situation was open before her. She saw the tie, that it was slanting, muddy, and slippery. She admits she could have stepped over it, or walked around it. She did neither, but deliberately stepped on it. She must bear the unfortunate consequences of her carelessness.

FULGHUM *v.* R. R.

The case is very much like that of *John v. R. R.*, 133 Ga., 525, where a woman with full knowledge that a strip of pavement along the car track had been torn up, decided to step across the excavation, and in doing so stepped on a paving stone and slipped and fell.

The Court says: "The conductor, who was inside the car, had nothing to do with this decision, or the effort to carry it out. When she attempted to step from the car across the opening in the pavement, she placed her foot on a paving stone, or dirt, which gave way, and she was hurt. She took the chance of being able to make the long step successfully, and she failed to do so in safety. Even if the defendant was not altogether faultless, nevertheless, she cannot recover for the results of her own conduct, with full knowledge and in full view of the situation. Her injury was unfortunate, but she has no right to recover from the defendant. This case is not like those involving concealed danger, or dangerous places known to the company and not to the passengers, or where a passenger was ordered, or forced to leave a car, or where there was a defect in street or sidewalk, which may have been previously known to a passenger, but of the proximity or danger of which by reason of darkness, or other cause, at the time of the injury, he was not aware."

We do not deem it necessary or useful to discuss the cases cited in the brief of the learned counsel for plaintiff. None of them bear even a little resemblance to the case at bar, which is peculiar and unusual in the facts presented.

The judgment of the Superior Court is

Affirmed.

CLARK, C. J., dissenting. When the train stopped at Bagley the *feme* plaintiff started to the rear door of the coach, which was at or near the crossing, to get out. Had she been permitted to do so she would not have been injured. The conductor called her to come to the front door, which was the length of the car, some sixty feet farther from the crossing. When she got upon the ground there were several cross-ties lying along the roadbed between her and the railroad crossing. It had been raining and

the walkway around the end of the cross-ties was muddy and slippery and the sixty feet that she was unnecessarily required to walk to reach the crossing was in a shallow cut. It was negligence in the defendant company to require her to get out at this spot instead of the other end of the coach, where she would have stepped down upon the crossing. The defendant owed to her a decent and safe landing place, all the more so where, this not being a regular station, there was no platform.

The burden was upon the defendant under the statute to prove contributory negligence. It offered no evidence whatever to that effect, and the only evidence on the point was by the plaintiff herself, who said that it seemed to her safer to step on the cross-ties than on the muddy sloping earth in getting back to the crossing. It is patent to any one that this must have been so. If the cross-ties were slanting a little, so was necessarily the ground upon which they lay, and the ground, being soft and muddy, was much more slippery than the cross-ties could have been. If she had fallen by slipping in the mud, as she doubtless would have done, she must have fallen upon the cross-ties and been worse hurt. At any rate, the plaintiff had a right both under the Constitution and the statute to have a jury and not the judge to pass on the facts.

It was the duty of the defendant to have given the plaintiff a safe place to dismount. It did not do so, and would not permit her to get off at the other end of the coach, where she would have been safe. The burden was upon the defendant to prove contributory negligence. It did not do so, and the only evidence is that of the plaintiff, that she pursued the safest course in stepping upon the cross-ties instead of upon the slippery mud.

The plaintiff was still a passenger when she fell. Being a woman, she was entitled to the attention that the law required to be paid to women and children, who are less able to take care of themselves than men. *Morarity v. Traction Co.,* 154 N. C., 586. The conduct of the defendant company in preventing the *feme* plaintiff from getting out in a safe place and causing her to walk sixty feet through mud and slush was of itself actionable.

Certainly, the judge had no right to say as a matter of law

and in violation of the statute that the plaintiff was guilty of contributory negligence because she chose what seemed to her and what the jury doubtless would have found (if she had been allowed her constitutional right to a jury trial) was the safer method of traversing the sixty feet of the sloping cut.

In *Roberts v. R. R.,* 155 N. C., 84, this Court quotes with approval, as it had previously done in *Smith v. R. R.,* 147 N. C., 450, from Hutchison on Carriers, sec. 128, as follows: "It is the duty of railway companies as carriers of passengers to provide platforms, waiting-rooms, and other reasonable accommodations for such passengers at the stations and *at such places* at which they are in the habit of taking on and putting off passengers. Their public profession as such carriers is an invitation to the public to enter and alight from their cars at their stations, and it has been held that they must not only provide safe platforms and approaches thereto, but that they are bound to make safe for all persons who may come to such stations in order to become their passengers or who may be put off there by them all portions of their station grounds reasonably near to such platforms and to which such persons may be likely to go; and for not having provided such stational accommodations and safeguards railway companies have frequently been held liable for injuries to such persons." And in *Mangum's case,* 145 N. C., 153, *Associate Justice Brown,* in delivering the opinion, said: "It seems now to be almost elementary that one of the recognized duties of a railway company that undertakes to carry passengers is to keep its station premises in a reasonably safe condition, so that those who patronize it may pass safely to and from the cars. *Pineus v. R. R.,* 140 N. C., 450; Wood on Railways, 310, 1341, 1349. This duty extends not only to the condition of the platform itself, whereon passengers walk to and from the trains, but also to the manner in which that platform is allowed by the common carrier to be used. *Western v. R. R.,* 73 N. Y., 935; Wood, *supra.* The defendant owed a duty to plaintiff, and to all other passengers, to keep its depot platforms used by them as a means of ingress and egress free from obstructions and dangerous instrumentalities, especially at a time

158—36

when its passengers are hurrying to and from its cars," citing
*Pineus v. R. R.,* 140 N. C., 450, and *R. R. v. Johnston,* 36 Kan-
sas, 769.

The plaintiff not having left the carrier's premises, was still
a passenger. *Hansley v. R. R.,* 115 N. C., 602. Being still a
passenger, she was entitled to a safe exit. 2 White Personal
Injuries, sec. 557. If the railroad offers an egress that is
unsafe, it is negligence. 2 White Personal Injuries, 619.

"The railroad should so arrange its station grounds that a
passenger who gets off a train at the station, or *at places pro-
vided to alight,* may leave the cars without danger, and a rea-
sonably safe passageway or a bridge should be provided leading
to and from the station." *Hulbert v. R. R.,* 40 N. Y., 152.
There a passenger who fell in a cattle-guard, going from the
car to the station, was injured and recovered damages. "Every
spot likely to be visited by passengers departing from depots
should be made safe and kept so, and passengers injured may
have compensation." 1 Bishop on Noncontract Law, sec. 1086,
quoted with approval, *Lucas v. R. R.,* 119 Ind., 583; *s. c.,* 120
Ind., 206; *Gaynor v. R. R.,* 100 Mass., 215.

The passageway to and from a depot must be kept safe and
passengers are entitled to a suitable place of egress. 1 Fetter on
Carriers, 112; 2 Hutchison on Carriers, 1060, 1063. The de-
fendant having required the female passenger to get out, not at
the crossing, owed it to her to give her a safe, dry path back to
the crossing, and if hurt by any defect in getting to the crossing
the defendant is liable. *Autry v. R. R.,* 156 N. C., 293.

The defendant was more negligent, not less so, in making the
plaintiff get out at an unsafe place, when she could have gotten
out at a safe place at the other end of the coach, as she wished to
do, because this was a flag station. She has been deprived of a
right guaranteed her by the statute and the Constitution in
being arbitrarily refused by the judge the opportunity to have
twelve men to pass upon the question whether the railroad was
guilty of negligence in causing her to get out of the train not at
the crossing place. His Honor was further in error in depriv-
ing her of the benefit of the statute which placed upon the de-
fendant the burden of proof to show that the plaintiff was

FULGHUM *v.* R. R.

guilty of contributory negligence and in finding himself, not only without any evidence whatever, but in contradiction of the only evidence before him, that she was guilty of contributory negligence. She testified that she took the safest course. The presumption under the statute is that she did. Revisal, 483. This presumption should be reversed only by a jury, as the statute requires.

The conduct of the defendant and the action of the court below are without any precedent to sustain them. All passengers, and especially ladies, are entitled to better treatment than this plaintiff has received. Her ankle was broken because the defendant put her off at an unsuitable place when she could have gotten off at a safe place, and that, too, when it was apparent that for her to get back to the proper point, the road, she would have to traverse a muddy, slippery, sloping bank encumbered with cross-ties. If necessary for her to get out at the front end of the coach, the train should have been run back till she could have landed at a safe spot.

The plaintiff testified that the usual place for putting off passengers at Bagley was at the crossing. That the egress they gave her was not a safe exit is conclusively shown by the fact that in attempting to get back to the crossing her ankle was dislocated, by reason of which she suffered greatly and was laid up two months. Her testimony that she chose the safest plan must be taken as true on a nonsuit. *Spruill v. Insurance Co.,* 120 N. C., 147; *Powell v. R. R.,* 125 N. C., 372, and cases there cited. In *Wright v. R. R.,* 127 N. C., 228, this Court said: "The Court has heretofore had occasion to condemn the growing tendency to take cases from the jury and limit their sphere in damage cases. The right·of trial by jury is guaranteed by the Constitution, and on all disputed issues of fact the courts cannot be too careful to refrain from invading the province of the constitutional triers of fact."

HOKE, J., concurs in the dissenting opinion of CHIEF JUSTICE CLARK.