# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

THE CHICAGO AND EASTERN ILLINOIS RAILROAD CO.

*v.*

ARMSTED T. A. FILLER.

*Opinion filed February 21, 1902.*

1. EVIDENCE—*what tends to show the plaintiff used due care for his safety.* In an action for injuries received by the plaintiff by being caught between the cars when attempting to pass through at a crossing, the evidence tends to show that plaintiff was using due care which establishes that he was waiting, with a large number of other persons, for the crossing to be cut; that the brakeman pulled the pin; that the cars separated several feet, but that as plaintiff started to pass through the opening the cars suddenly came together and injured him.

2. SAME—*what sufficient to go to jury on question of defendant's negligence.* Evidence that the brakeman, in cutting a crossing where a large number of people were waiting, pulled the pin before signaling the engineer, that the cars separated several feet, but that the front end of the train was suddenly backed against the rear end, catching the plaintiff, who had started to cross, is sufficient to go to the jury on the question of defendant's negligence.

3. VARIANCE—*a party claiming variance must object to the evidence upon that ground.* If it is claimed there is a variance between the allegations and the proof, it is necessary that the evidence be objected to and the alleged variance pointed out.

4. INSTRUCTIONS—*an instruction is properly refused which unduly restricts right of recovery.* An instruction is properly refused which restricts the plaintiff's right of recovery to certain acts of negligence, whereas there is evidence tending to prove other acts of negligence within the allegations of the declaration.

5. SAME—*instruction is properly refused which gives undue prominence to portions of the evidence.* An instruction is properly refused which singles out and gives undue prominence to portions of the evidence while ignoring other important testimony.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. S. C. STOUGH, Judge, presiding.

This is an action in case, commenced in the superior court of Cook county on August 20, 1898, by the appellee against the appellant railroad company and the Union Stock Yards and Transit Company to recover damages for a personal injury to the appellee. Both defendants filed pleas of the general issue. Subsequently, however, the pleadings were amended by discontinuing the suit as to the Union Stock Yards and Transit Company, and it proceeded against the appellant company alone. The trial resulted in finding the appellant company guilty, and assessing appellee's damages at the sum of $2000.00. Motions for new trial and in arrest of judgment were overruled, and judgment was entered upon the verdict. An appeal was prayed and allowed to the Appellate Court. In the Appellate Court, appellee having remitted $1000.00 from the judgment of the superior court, that judgment for the sum of $1000.00 was affirmed by the Appellate Court, and the costs were taxed against appellee.

The material facts, as stated by the Appellate Court, are as follows:

"Appellee, at the time of the accident, which occurred after dark between five and six o'clock on the evening of December 11, 1897, was thirty-three years of age and engaged in the business of buying and selling stock at the stock yards in Chicago. He, with a companion named

Waugh, had left their places of business and had walked
east therefrom through the entrance to the Union Stock
Yards.   This entrance was a roadway about twenty or
twenty-five feet wide, and a short distance to the east
of the stock yards it is crossed by four railroad tracks
of the Union Stock Yards and Transit Company, which
tracks were, at the time in question, and before, com-
monly used by different railroad companies that did busi-
ness at the stock yards.

"As appellee with Waugh proceeded eastward from
the stock yards entrance, they found the crossing of the
roadway obstructed by a freight train of appellant stand-
ing upon the easterly of the four tracks, some twenty cars
of which, with the engine attached, were to the north
of the crossing, and some eight or ten cars were to the
south.   Quite a number of other people, variously esti-
mated by the witnesses at from one hundred to two hun-
dred persons, had, at the time appellee came out of the
entrance, congregated about and near the railway cross-
ing, waiting to pass to the east, the train having ob-
structed the crossing some two or three minutes prior,
and this was about the time of day when the business
houses of the stock yards closed down and the employes
engaged there were on their way home.   Appellee and
Waugh were in a hurry to get home, and made their way
through the crowd to a point very near or next to the
train.   Just as appellee got near to the train, one of the
train brakemen pulled a coupling pin from the coupling
between two cars, so as to open the crossing and allow
the crowd to pass through; and, as he did so, the cars of
the train on or near the south edge of the crossing sepa-
rated from three to six feet, and, as they did so, appellee
started through the opening thus made, and, before he
could get to the other side of the train, the forward or
northerly part of the train came back and he was caught
between the draw-bar and the link attached to the other
draw-bar and quite seriously bruised in his legs," etc.

Kenesaw M. Landis, and Sol Rosenblatt, (W. H. Lyford, of counsel,) for appellant.

Stirlen & Dickson, for appellee.

Mr. Justice Magruder delivered the opinion of the court:

*First*—At the close of all the evidence, the defendant below, the appellant company here, asked the court to give to the jury a written instruction, instructing them to find their verdict for the defendant on the entire evidence introduced in the case. The court refused to give this instruction, to which ruling exception was duly taken. The refusal of this instruction is the first error called to our attention in the brief of appellant's counsel.

Whether or not the court erred in refusing to instruct the jury to find for the defendant depends upon the question, whether there was any evidence in the case tending to support the cause of action. If there was evidence tending to show the plaintiff's right to recover, it was the duty of the court to submit the case to the jury. (*Landgraf* v. *Kuh*, 188 Ill. 484, and cases cited.)

In order to entitle the appellee to a recovery, it was necessary to show that he was in the exercise of reasonable care for his own safety at the time the injury was received; and also that the appellant was guilty of such negligence as caused the injury. The first question, therefore, which arises, is whether or not the evidence tends to show that the appellee was in the exercise of ordinary or reasonable care when he was injured.

Running from the gate of the stock yards eastward across the railroad tracks was a passageway or road, called by some of the witnesses a highway. This passageway or highway was planked for a certain distance between the railroad tracks. It was used by persons passing from the gate of the stock yards eastward across the tracks. Just before the accident occurred, appel-

lee and some one hundred or two hundred other persons were standing in front of the gate and opposite a freight train of appellant upon the fourth track, waiting for an opportunity to cross to the eastward.

The evidence tends to show, that a train brakeman of the appellant, named Blade, who was near the crossing, pulled a coupling pin, so as to separate the train into two parts. The object of doing this was to clear the crossing and enable the crowd to pass through. The pulling of the coupling pin by the brakeman did separate the train into two parts. Some of the testimony tends to show, that the northern part of the train, consisting of the engine and some twenty cars, was moved northward, and that some eight or ten cars on the south end of the train moved southward. Other evidence tends to show that the northern part of the train stood still, while only the cars at the rear end of the train moved. But whether the northern portion of the train was in motion or was standing still, the evidence shows that an opening was produced by this separation of the freight train into two parts. Appellee, and a man named Waugh with him, being in front of the waiting crowd, advanced eastward through the opening thus made for their passage. The action of the trainmen in uncoupling the train, and separating it into two parts, was an invitation to those standing there to cross through the opening. After the appellee had proceeded about half way through the opening, the northern or forward part of the train backed against the southern or hindmost part of the train, and the appellee was caught between the two portions of the train thus coming together.

It is charged, that the appellee was guilty of negligence in attempting to pass through the opening at the time when he made the attempt, and in the manner in which he made the attempt. The ground, on which it is claimed that he was negligent, is that he hurried into the opening ahead of the rest of the crowd, and that he

failed to heed a warning given by a policeman, or some other person in the crowd, that there was danger. The evidence tends to show that there was nothing in the position of the two parts of the train to forewarn the appellee, that the northern portion of the train would back against him. There is evidence tending to show that, when the warning as to the backing of the train was given, the appellee was already in the middle of the opened passage, and that, as he turned around, the backing portion of the train struck him. There is also evidence tending to show that the warning as to the backing of the train was given before the appellee advanced into the opening. But it was for the jury to decide where the truth lay in this conflict of testimony. Upon this branch of the case, the Appellate Court say: "If the two ends of the train were standing still at the time appellee started through, and the ends of the cars were from four to six feet apart, or even if the north end of the train was moving and the south end stationary at the time he started through (and in both these respects there is evidence tending to show that this was the situation), we are not prepared to hold that appellee was guilty of contributory negligence." Inasmuch as the appellant, by the action of the brakeman in pulling the coupling pin and dividing the train into two parts, invited appellee to pass through the opening, and inasmuch as he was struck by the unexpected backing of the front part of the train, and in view, further, of evidence that he did not hear any warning before he advanced into the space between the two portions of the train, we are of the opinion that there is proof tending to show that the appellee was in the exercise of ordinary care for his own safety.

The next question upon this branch of the case is whether the appellant was guilty of negligence. There is evidence tending to show that there was negligence on the part of the appellant in two respects. The members of the train crew consisted of the brakeman, Blade,

the conductor of the train or head switchman, a forward brakeman, the engineer and the fireman. The evidence tends to show that it was the duty of the brakeman, Blade, to give a signal to the engineer or other person at the head of the train that he was going to remove the coupling pin, and divide the train into two parts, before he actually did so. There is evidence tending to show that the brakeman, Blade, did not give this signal until he had removed the coupling pin, and that then he walked a car's length to get on top of the car to give the signal, and came near being knocked off the car by the concussion produced by the backing of the forward part of the train. Whether or not the engineer received the signal before he moved the train forward is a disputed matter. The evidence tends to show that the engineer was guilty of negligence in backing the train, under all the circumstances of the case, when a crowd of stock yards employes were waiting to pass over the passageway mentioned, and when a separation of the train into two parts was necessary for this purpose. It is insisted, upon the part of the appellant, that a coupling pin between two of the cars near the engine broke in some way, and that the engineer had to back the engine on account of this accident in order to couple the cars. It was for the jury to say, under all the circumstances, whether or not the engineer was justified in backing the train by reason of the accident, or whether or not he could have done so in such a way as not to produce the concussion which injured the appellee. Upon this subject, the Appellate Court say: "It appears that an automatic coupling of two cars near the engine separated or gave way when the engineer started his engine to pull the train to the north, and, as soon as he discovered this fact, he backed the engine so as to re-couple the coupling between the cars, and in so doing he pushed the whole north end of the train back, and by this movement of the north end of the train, appellee was caught and in-

jured, as above stated. * * * In fact, all the evidence considered, we think questions for the consideration of the jury, both as to the appellant's negligence and appellee's care, were presented. * * * The brakeman, in pulling the pin and signaling the engineer to go ahead, was either negligent in not notifying the engineer or men at the north end of the train, that the train was cut at the crossing, or if the engineer knew that the train was cut, he was negligent, after the coupling near the engine had separated, in backing up to re-couple without giving any warning that he would do so."

In view of what has been said, we are of the opinion that there was evidence tending to show negligence on the part of the appellant, such as justified the submission of the question to the jury. Certain it is, that the train unexpectedly backed against the appellee and injured him, when it was the duty of the persons in the management of the train to keep the passageway open until the appellee, and the others with him, had passed through the opening. Whether the negligence was the act of the engineer in improperly backing the train, or the act of the brakeman, Blade, in separating the train without giving notice or a signal to the engineer, or whether the injury to the appellee was the result of negligence on the part of both the engineer and the brakeman, in either case, the trial court was justified in submitting the matter to the jury.

It is claimed by counsel for appellant that, if there was any negligence on the part of Blade in pulling the pin and in attempting to cut the crossing without having first signaled or communicated with the head end of the train, no such claim of negligence was charged or made in the declaration or in any of its counts. We think that the charges of negligence in the declaration are sufficiently broad to cover any proved negligence on the part of the brakeman, Blade, as well as on the part of the engineer. But the point thus suggested merely involves a

question of variance. If there was a variance between the allegations of the declaration and the proof upon this point, it was necessary for the appellant to object to the evidence upon that ground. Our attention is not called by counsel to any such objection upon the ground of variance, and it is too late to make it in this court.

*Second*—It is claimed upon the part of appellant, that there were certain errors committed by the trial court in the giving of instructions for the appellee, and in the refusal of instructions asked by the appellant.

The court instructed the jury on the part of the appellee as follows:

"If you find that the plaintiff has proved his case as laid in the declaration, or any count thereof, by a preponderance of the evidence, then you should find the defendant guilty."

This instruction is claimed to be erroneous upon the alleged ground, that it submitted to the jury the case not only on the first count of the declaration, but also on the second and third counts, and that the two latter were not in any way applicable to the case. The declaration consisted of three counts. The second and third counts only differ from the first in the fact, that the second count alleged that the appellant neglected to observe an ordinance of the city in regard to sounding a steam whistle at a certain distance before the crossing was reached; and the third count alleged, that the defendant drove the engine and cars at a dangerous speed without ringing a bell or giving any suitable or timely warning of the approach to the opening or passageway above referred to. The first count charged that the appellant negligently caused the locomotive, engine and train of cars to be driven over said crossing and against the cars which defendant had uncoupled, thereby injuring the plaintiff. The first instruction objected to was not erroneous, as submitting the case upon the whole declaration, because, by the express terms of the instruction, the recovery

195—2

could be under any one count of the declaration.   Upon this subject the Appellate Court correctly say: "We think there was evidence tending to sustain both the first and third counts of the declaration, and that there was no error in giving the instruction."

The third instruction, given for the plaintiff, is objected to upon the alleged ground that it authorized the jury to award the plaintiff damages for "any permanent injuries sustained by him, if the jury believe from the evidence that the plaintiff has sustained such permanent injuries as the result of the negligent acts complained of." It is charged by the appellant that there is no evidence of any permanent injury.   We agree with the Appellate Court upon this subject when they say:   "This claim is not well founded, as the evidence of plaintiff tends to show that, while his injury was not a serious one, after a lapse of six months from its happening it is of such a nature that plaintiff will probably never be fully restored to the condition he was in before the injury."

It is contended by the appellant, that the trial court erred in refusing to give the fifteenth instruction asked by the appellant.   That instruction was properly refused, because it limited the appellee's right of recovery to the negligence of the engineer, and to the manner in which the coupling of the cars in the forward part of the train near the engine was done, whereas there is evidence, tending to show that the negligence of the brakeman, Blade, in removing the coupling pin near the south end of the train, and thereby dividing it into two parts, without giving any notice or signal to the persons in charge of the forward part of the train, was a cause of the accident, either alone, or in connection with the conduct of the engineer.   It is also claimed by the appellant that the trial court erred in refusing to give the fourteenth instruction asked by the appellant.   This instruction was properly refused, because it singled out portions of the evidence and gave undue prominence to them,

while ignoring other important testimony; and because the substance of it was covered by other instructions, which were given at the request of the appellant.

We find no error in the record, which would justify us in reversing the judgment of the Appellate Court, and therefore that judgment is affirmed.

*Judgment affirmed.*