# WASHINGTON UTILITIES COMPANY *v.* WADLEY.

OBJECTIONS AND EXCEPTIONS; WAIVER; STREET RAILWAYS; NEGLIGENCE; DIRECTION OF VERDICT; VARIANCE; DAMAGE; EVIDENCE; RELEASE.

1. The defendant, by introducing evidence after the denial of his motion to direct a verdict in his favor, made at the close of the plaintiff's case, waives such objection, and cannot urge it upon appeal.

2. In an action against a street railway company for injuries received by the plaintiff while driving a horse and wagon across the defendant's tracks, it is not error for the trial court to refuse to direct a verdict for the defendant, where the testimony for the plaintiff is to the effect that the motorman of defendant's car made no effort to stop the car before it hit the wagon, but "tried to beat the wagon across;" that he did not slow up at all until he struck the wagon; and that he had ample opportunity to stop and let the plaintiff get across.

3. Where in a personal injury action the declaration charged that the plaintiff was injured just east of a bridge named, while the testimony showed it occurred just west of the bridge, a claim made by the defendant for the first time on appeal, that there was a variance between the allegations and proof, is made too late and will not be considered, especially where the record shows that there was no misunderstanding at the trial as to where the accident actually occurred.

4. Where a person is injured by being struck by a street railway car while crossing the tracks of the company, the company is liable for the injury sustained, although such person negligently exposed himself to the risk of injury, if the motorman of the car actually saw him, or could have seen him by the use of reasonable diligence, in time to stop the car. (Following *Washington R. & Electric Co.* v. *Cullember,* 39 App. D. C. 316, and *Washington-Virginia R. Co.* v. *Himelright,* 42 App. D. C. 532.)

5. A general exception to the trial court's charge to the jury will not be considered on appeal.

Note.—On doctrine of last clear chance as affected by question whether negligence of plaintiff or deceased and of defendant was concurrent, see notes in 7 L.R.A.(N.S.) 132; 7 L.R.A.(N.S.) 152; 17 L.R.A.(N.S.) 707; 19 L.R.A.(N.S.) 446; and 27 L.R.A.(N.S.) 379.

D. C.]                    Statement of the Case.

6. In a personal injury action, it is not error for the trial court to leave the question of whether the plaintiff was permanently injured to the jury, where the plaintiff in testifying two years after the accident said in effect that his thumb was permanently injured and that he still had pains in his back; and his physician testified that the thumb had been dislocated and the muscles of the plaintiff's back sprained, and that the plaintiff was still suffering in his back, and that a sprain may last a lifetime, although the physician also testified that he would not say that the injury was permanent. (*Washington R. & Electric Co.* v. *Cullember, supra.*)

7. Where one of the defenses in an action for personal injuries is that the plaintiff executed a release of his claim against the defendant, it is not error for the trial court, in charging the jury upon the question of the validity of the release, to tell them that it is not necessary to find that the defendant's agent who procured its execution by the plaintiff was guilty of intentional fraud in the matter. (Following *Washington R. & Electric Co.* v. *McLean,* 40 App. D. C. 465.)

8. An objection to the charge of the trial court in a personal injury action, to the effect that the charge was not sufficiently explicit on the question of the validity of a release executed by the plaintiff, will not be considered when made for the first time on appeal.

No. 2832.  Submitted November 4, 1915.  Decided November 29, 1915.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia, on verdict, in an action to recover damages for alleged personal injuries.
*Affirmed.*

The COURT in the opinion stated the facts as follows:

Appeal from a verdict and judgment for the plaintiff, Mack Wadley, appellee here, in the supreme court of the District in an action for personal injuries.

The evidence of both parties clearly showed that the accident occurred south of the Tidal basin in Potomac park, and just west of one of the bridges over the easterly outlet to the basin. The Southern Railroad tracks cross the park at this point upon an embankment considerably higher than the park level. There is a highway around that portion of the park south of the

embankment, the eastern entrance to which is just west of said · Tidal basin bridge. Defendant's double tracks occupy the highway north of the railroad embankment, and for a considerable distance west of said Tidal basin bridge run parallel to the railroad tracks, but, of course, on a level with the highway. Anyone driving north from the southern portion of the park, thus cut off by the railroad embankment, and using the easterly entrance, would necessarily drive across defendant's tracks.

Plaintiff's evidence was in substance as follows: He has been working for his present employer eighteen years. Does not know when he was born,—"just puts it (his age) at forty-eight as near as he can get at it." In the forenoon of March 7, 1913, he had been hauling some dredge material to the southern portion of Potomac park, using said eastern entrance. The horse was a heavy draft animal and very slow, and the wagon also was heavy. The distance from the head of the horse to the rear end of the wagon was 20 feet. As the plaintiff emerged from said entrance, going north, he looked east, but did not look in the opposite direction until he was upon the tracks of the defendant company. He then saw a car coming from the west and distant about 150 feet. He urged his horse forward to the best of his ability, but, despite his efforts, the car hit the rear wheel of his wagon and he was thrown to the ground and injured. A witness for the plaintiff, who saw the accident, testified that the motorman rang the bell once, but too late. Asked whether the motorman made any effort to stop the car before he hit the wagon, he replied: "No, he tried to beat this wagon across. He did not slow up at all. Went right straight through. He didn't slow up until he struck the wagon." The witness further testified that "the motorman had plenty of chance to stop and let him (plaintiff) get across."

The plaintiff was questioned concerning a release which he had signed. It appeared that he was injured at about 11 o'clock and immediately taken to the Emergency Hospital. He then was suffering from a scalp wound, which required several stitches, and, according to the physician who attended him, was in a stupid condition as the result of his fall, although,

according to the physician, he probably would have appreciated such a transaction as the signing of a release. A claims agent of the defendant company received immediate notice of the accident, and reached the hospital at about 12:30, when he was permitted to see the plaintiff. According to plaintiff's testimony, "he could read and write a little bit, not much; that he could read enough to write his name;" that a man came to the hospital and asked him if he could write, and, upon being informed that he could write his name, told plaintiff to put his name on a piece of paper; that he put his name on the paper and the man said: "This is a $5 check." Whereupon plaintiff said: "You did not tell me this check you wanted me to put my name on. I thought you wanted me to signify the car struck my horse and wagon." Plaintiff further testified that he handed this check to the doctor who dressed his wounds. It subsequently was tendered the defendant company. The plaintiff also testified that he did not know what it was he signed; that it was not read to him. The claims agent testified that he read the release to the plaintiff, and that plaintiff signed it in the presence of the hospital physician. This physician, however, while admitting that he signed as a witness, denied that he saw the plaintiff sign it, or that he heard any conversation between the plaintiff and the claims agent.

Concerning the accident itself the evidence for the defendant was in substance as follows: The motorman, while "running a little late that morning," was sure he was not exceeding 12 miles an hour at the time of the accident. When his car was about *40 or 50 feet* from said driveway, under the Southern Railroad tracks, he saw plaintiff driving toward the track. He rang the bell, turned off the power, and applied the air brakes. He "rang the bell several times when plaintiff was about *20 feet away from the car track*." Plaintiff thereupon lashed his horse with a whip. The witness reduced the speed of the car as much as he could. He testified that "the brakes were doing all they could to stop the car," but the front of the car caught the rim of the hind wheel of the wagon. The

testimony of other witnesses for the defendant did not differ materially from that of the motorman. An occupant of the car, however, testified that it came to a stop "without any jolt at all.   *   *   *   That there was no sudden stopping of the car at all."

*Mr. John S. Barbour, Mr. Douglas Mackall,* and *Mr. Basil D. Boteler* for the appellant.

*Mr. W. Gwynn Gardiner* and *Mr. Blaine Coppinger* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

The first assignment of error relates to the refusal of the court to direct a verdict for the defendant at the close of plaintiff's evidence. By proceeding to introduce testimony in its own behalf, the defendant waived its right further to press this motion. *McCabe & S. Constr. Co.* v. *Wilson,* 209 U. S. 275, 52 L. ed. 788, 28 Sup. Ct. Rep. 558. But the ruling clearly was right, for, accepting the plaintiff's evidence as true, the motorman either saw, or by the exercise of reasonable care should have seen, him in ample time to have prevented the accident.

Plaintiff's declaration alleged that the accident occurred "at or near the intersection of Water street with Fourteenth street, S. W.;" in other words, just east, instead of just west, of said Tidal basin bridge. It now is suggested that there was a variance between the allegations and the proofs as to the place of the accident. Obviously, this objection comes too late. Had the point been made in the trial court, the defect, if there was one, could have been cured by amendment. *Campbell* v. *United States,* 224 U. S. 99, 56 L. ed. 684, 32 Sup. Ct. Rep. 398. That this is an afterthought is clear from an examination of the evidence which, as previously noted, shows that there was no misunderstanding as to where the accident actually took place.

This court has ruled that a street railway company is liable

for personal injuries sustained by one who has negligently exposed himself to the risk of injury if the motorman actually saw him, or could have seen him by the use of reasonable diligence, in time to stop the car. *Washington R. & Electric Co.* v. *Cullember,* 39 App. D. C. 316; *Washington-Virginia R. Co.* v. *Himelright,* 42 App. D. C. 532. The charge of the court in the present case was in strict accord with the rule laid down in the above cases, and we therefore shall pass over the assignments of error directed to this question.

A general exception was noted to the court's charge on the question of damages. It now is insisted that there was no competent evidence tending to show that plaintiff received permanent injuries to his back or thumb, and hence that the element of damages for future disability should have been withdrawn from the jury. We many times have ruled that an omnibus exception of this kind will not be considered. The trial court is entitled to know the ground of the objection, where it may not be inferred from the objection itself. However, the plaintiff, testifying two years after the accident, stated in effect that his thumb was permanently injured and that he still had pains in his back at times. The physician who attended him at the time of the accident testified that his thumb was dislocated and that the muscles of the back were sprained; that he treated plaintiff for several weeks, during which time he "was suffering intense pain with his back. * * * That a sprain may last a lifetime." He further testified that "he [plaintiff] is still suffering from his back;" although the witness would not say that the injury was permanent. This evidence was sufficient to warrant the charge as given. *Washington R. & Electric Co.* v. *Cullember,* 39 App. D. C. 316, 326; *Horowitz* v. *Hamburg-American Packet Co.* 18 Misc. 24, 41 N. Y. Supp. 54; *Chicago & E. I. R. Co.* v. *Filler,* 195 Ill. 18, 62 N. E. 919; *Union P. R. Co.* v. *Jones,* 1 C. C. A. 282, 4 U. S. App. 115, 49 Fed. 343.

It is further objected that the court erred in charging the jury, in reference to the validity of the release, that it was not necessary to find "that the agent was guilty of any inten-

tional fraud in the matter." A direct answer to this assignment is found in *Washington R. & Electric Co.* v. *McLean,* 40 App. D. C. 465. The further point now is made that the charge was not sufficiently explicit on this question. That objection should have been raised in the trial court, and, as it was not, it will not be considered here.

The judgment must be affirmed, with costs. *Affirmed.*