## ALAMO v. DEL ROSARIO.
### No. 7006.

United States Court of Appeals for the District of Columbia.

Decided June 6, 1938.

Cornelius H. Doherty, Henry I. Quinn, and William T. Hannan, all of Washington, D. C., for appellants.

Dorsey K. Offutt and Eugenio M. Fonbuena, both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

EDGERTON, Associate Justice.

This is an appeal by the defendants from a judgment for the plaintiff in an action for personal injuries. Plaintiff Del Rosario was a guest in an automobile driven by defendant Alamo when a bus of defendant Nevin Midland Lines collided with it and plaintiff was seriously injured. Several eyewitnesses testified. It is not disputed that there was evidence of negligence on the part of both Alamo and the bus driver. There was evidence that Alamo turned to the left and started across the street in the path of the closely approaching bus. But there was also evidence to the contrary, to the effect that Alamo, after turning to the left with a view to crossing the street, brought his car to a full stop near the middle of the street, while the bus was still a block away, and did not move again. Plaintiff himself was one of the witnesses who testified to this effect. On cross-examination plaintiff testified that he never authorized any one to file suit against Alamo, but the court sustained an objection by plaintiff's counsel to this testimony. Defendant Alamo appeals on the grounds that (1) he should have been permitted to examine plaintiff as to whether he had authorized suit; (2) the court improperly permitted the jury to award damages for future disability and suffering; and (3) he was entitled to

a directed verdict because Del Rosario's own testimony showed that there was no negligence on Alamo's part. Appellant corporation appeals on the second ground alone.

(1) There was no error in excluding Del Rosario's testimony that he had not authorized suit against Alamo. That, as the court said, was not a matter for the jury. Counsel's authority can be questioned before trial, by a motion that he be required to show it. Pueblo of Santa Rosa v. Fall, 56 App.D.C. 259, 261, 262, 12 F.2d 332. A court may, in its discretion, require him to do so at any stage of a case. Id., 273 U.S. 315, 47 S.Ct. 361, 71 L.Ed. 658. If appellant Alamo, during the trial, had moved that the case be dismissed unless appellee's counsel showed his authority, the question would have arisen what circumstances, if any, excused appellant's failure to make such a motion earlier. As he made no such motion at any time, the question does not arise.

(2) Medical testimony to the permanent impairment of plaintiff's knee was introduced. Whether it was struck out is not quite clear from the record. If so, it does not follow that there was no evidence before the jury to support a finding of permanence. Plaintiff lost consciousness in the accident. He suffered a small laceration on the back of the scalp, a lateral dislocation of the right knee joint, a fracture of the tibial spines, and a comminuted fracture of the fibula, i. e., several lines of fracture as distinguished from a single clean break. A few weeks after the accident an X-ray showed that the joint relationship was perfect, the position good and the alignment excellent. Yet three months after the accident he could not do his work because he could not lift anything heavy; and at the time of the trial, almost two years after the accident, he was still unable to do his former work, and walked lame, whereas before the accident he walked straight. In the absence of any medical testimony that the injuries were temporary, this was enough to take the question of their permanence to the jury. In Washington Railway & Electric Company v. Cullember, 39 App.D.C. 316, 320, 326, we sustained the submission of permanent impairment of hearing, although the only evidence on the point was that the plaintiff's hearing was still impaired at the time of the trial,

two years after the accident. In Washington Utilities Company v. Wadley, 44 App. D.C. 176, 181, although a physician testified that "a sprain may last a lifetime," there was no prediction that the plaintiff's would. But his pain continued "at times" two years after the accident, and this court sustained submission to the jury of the question of permanence. Cases in other jurisdictions also have permitted an inference of permanence to be drawn, without expert prognosis, from the nature of the injury and its continuance to the time of the trial, and this although the injury is not visible or tangible. Macon Railway & Light Company v. Streyer, 123 Ga. 279, 51 S.E. 342; Louisville Railway Company v. Casey, 71 S.W. 876, 24 Ky.Law Rep. 1527; Washington B. & A. Electric Railroad Company v. Cross, 142 Md. 500, 121 A. 374; Mischo v. Von Dohren, 126 Neb. 164, 252 N.W. 830. Contra, Horowitz v. Hamburg-American Packet Company, 14 App.Div. 631, 43 N.Y.S. 1156; Louisville & Nashville R. R. Company v. Eaden, 122 Ky. 818, 93 S.W. 7, 6 L.R.A.,N.S., 581. When the bad effects of an injury have continued for years, and there is no expert prediction, laymen may reasonably infer some degree of permanence. That they might reasonably refuse to do so would be less clear. On the other hand, if respectable physicians testify without contradiction that an injury is temporary, reasonable laymen can hardly say that it is permanent. Two cases on which appellants rely are of that sort, and are therefore not in point here. Deneen v. Houghton County Street Railway Company, 150 Mich. 235, 113 N.W. 1126, 13 Ann.Cas. 134; Weiner v. St. Louis Public Service Company, Mo. Sup., 87 S.W.2d 191.

(3) Alamo's negligence, if any, was in making an untimely left turn in the path of an approaching bus. He was not negligent if he stopped in the middle of the street, which was wide, while the bus was a block away, and did not move again; and according to the testimony of appellee himself, this is what happened. There was conflicting evidence on the point. Alamo urges that appellee's testimony should conclude him.

A stipulation, or judicial admission, "conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted." Wigmore, Evidence, § 2588.

But, "It is of the nature of an admission, plainly, that it be by intention an act of waiver, relating to the opponent's proof of the fact, and not merely a statement of assertion or concession, made for some independent purpose; in particular, a statement made for the purpose of *giving testimony* is not a judicial admission." Id., § 2594; cf. Supp.1934, § 2594a. Mere testimony, though it come from a party, is not "by intention an act of waiver." A witness is not selling something or giving something away, but simply reporting something. "The testimony of parties to a suit must be regarded as evidence, not as facts admitted." Matthews v. Story, 54 Ind. 417, 419. Accordingly, plaintiffs have been allowed to recover for personal injuries on testimony which contradicted their own. In Hill v. West End Street Railway Company, 158 Mass. 458, 33 N.E. 582, the plaintiff testified that a street car had stopped before it injured her by a premature start; she was allowed to recover on the theory that it had merely slowed down. In Whiteacre v. Boston Elevated Railway Company, 241 Mass. 163, 134 N.E. 640, a plaintiff who had testified that she was thrown by the stopping of a car was allowed to go to the jury on the basis that she was thrown by its starting. In Kanopka v. Kanopka, 113 Conn. 30, 154 A. 144, 80 A.L.R. 619, plaintiff's testimony, which was contradicted, indicated that she was guilty of contributory negligence in not taking advantage of an opportunity to escape injury. The court conceded that a party's testimony may sometimes amount to a conclusive admission, but permitted recovery on the strength of the other evidence because plaintiff's credibility was affected by her inability to speak English and the injury to her head suffered in the collision.

On the other hand, some courts in some circumstances treat a party's mere testimony as conclusive against him and do not allow him to win on other testimony that contradicts it. Massie v. Firmstone, 134 Va. 450, 461, 114 S.E. 652; Miller v. Stevens, 63 S.D. 10, 256 N.W. 152. In Stearns v. Chicago, R. I. & Pac. Railway Co., 166 Iowa 566, 578, 148 N.W. 128, a plaintiff's testimony that he did not stop his own train as he should have done, though contradicted, was held to show contributory negligence as a matter of law. But many cases which intimate that a plaintiff is conclusively bound by his own

testimony are not authority for the proposition, because they contain no contrary testimony. Thalhimer Bros., Inc., v. Casci, 160 Va. 439, 168 S.E. 433; Virginia Electric & Power Co. v. Vellines, 162 Va. 671, 175 S.E. 35; Frazier v. Stout, 165 Va. 68, 181 S.E. 377; Goodwin v. E. B. Nelson Grocery Company, 239 Mass. 232, 132 N.E. 51; Bell v. Johnson, 142 Kan. 360, 46 P.2d 886; Fulghum v. Atlantic Coast Line Railroad Company, 158 N.C. 555, 74 S.E. 584, 39 L.R.A.,N.S., 558; Thompson v. Purcell Construction Company, 160 N.C. 390, 76 S.E. 266. The note in 50 A.L.R. 979 includes citations of that sort.

 Obviously, the testimony of a party may be incorrect. The rule we are asked to adopt means, then, that the truth should not help a plaintiff who has testified to an error. But there is no estoppel, since no one has acted on plaintiff's representation, and no waiver since there was no intention to waive. The underlying notion seems to be that a party who has testified incorrectly should be punished by losing his case. But if he has committed perjury he should not be punished without trial, and if he has not committed perjury he should not be punished at all. Since his testimony was adverse to his interests, he is more likely to have been mistaken than lying. The proposed rule actually punishes him for two things, his honesty and his error. The plaintiff in most personal injury cases was subjected, just before he was hurt, to excitement enough to explain mistakes of observation and memory. In many cases, including the present one, he was so badly hurt that he lost consciousness. And even the calmest and most disinterested witness often sees things that did not happen and remembers things that he did not see. "There is no sound reason why the familiar doctrine that a party may contradict, though not impeach, his own witness, should not, if the circumstances are consistent with honesty and good faith, be applied when he is himself the witness. * * * In other words, the law recognizes the fact that parties, as well as other witnesses, may honestly mistake the truth, and requires juries to find the facts by weighing all the testimony, whatever may be its source. It is rarely that two persons relate alike the same occurrence; and, in cases of accidental injury, it is not unusual for the person injured correctly to perceive and accurately to remember some of the circumstances, and to be unable to give a correct statement of all." Hill v. West End Railway Co., 158 Mass. 458, 459, 460, 33 N.E. 582.

A distinction has sometimes been taken to the effect that if, but only if, the facts to which a plaintiff testifies are within his special knowledge, he is concluded by his testimony and cannot win on the contradictory testimony of others. Harlow v. Leclair, 82 N.H. 506, 136 A. 128, 50 A.L.R. 973; Fowler v. Pleasant Valley Coal Company, 16 Utah 348, 52 P. 594; Laffey v. Mullen, 275 Mass. 277, 175 N.E. 736. This distinction has been misapplied to facts comparable with ours. In Morris v. Boston & Maine R. R., 85 N.H. 265, 160 A. 52, the question was whether plaintiff had, as he testified, stopped his car on the railroad track; if so, he was negligent. Four eye witnesses testified that he had not stopped there, but was moving when the train struck him. The fact, like the disputed fact in the present case, was plainly open to observation, and not "peculiarly within the plaintiff's knowledge." (page 55.) But the court held the contrary, and concluded the plaintiff by his own testimony, while it purported to follow the Harlow case. Even the Harlow case itself, a leading case for the distinction, misapplied it. There a man furnished money with which a woman bought a car. When he sued for the money, he testified that an important part of the consideration was her agreement to be his mistress. She denied making such an agreement. The court held that the plaintiff was rightly nonsuited, because the alleged illicit agreement was "peculiarly within his own knowledge." The plaintiff probably knew whether the defendant had been his mistress, but it was not that relation which invalidated her contract to return his money. If anything invalidated that, it was an agreement to be his mistress in consideration of his furnishing the money. Whether she made such an agreement was not a matter peculiarly within the plaintiff's knowledge, and it was a matter about which he might easily be mistaken. The transaction may have been simply a friendly loan, to which disappointed hope and an imperfect memory later gave a false color. The elusive distinction which these cases attempt rests upon the premise that "When a party testifies to facts in regard to which he has special knowledge, such as his own motives, purposes, or

knowledge, or his reasons for acting as he did, the possibility that he may be honestly mistaken disappears." Harlow v. Leclair, 82 N.H. 506, 512, 136 A. 128, 131, 50 A.L.R. 973. If he is human, it does not disappear. Knowledge may be "special" without being correct. Often we little note nor long remember our "motives, purposes, or knowledge." There are few, if any, subjects on which plaintiffs are infallible.

Affirmed.