## CAPITAL TRANSIT CO. v. GRIMES.
### No. 9327.

United States Court of Appeals
District of Columbia.

Decided Nov. 24, 1947.

EDGERTON, Associate Justice, dissenting.

———◆———

Mr. R. Sidney Johnson, of Washington, D. C., with whom Messrs. Henry W. Kelly and Robert E. Lee Goff, both of Washington, D. C., were on the brief, for appellant.

Mr. S. Russell Bowen, of Washington, D. C., also entered an appearance for appellant.

Mr. Arthur G. Lambert, of Washington, D. C., with whom Mr. George L. Hart, Jr., of Washington, D. C., was on the brief, for appellee.

Before EDGERTON and CLARK and WILBUR K. MILLER, Associate Justices.

CLARK, Associate Justice.

This is an appeal from a verdict and judgment of the District Court of the United States for the District of Columbia in favor of appellee, plaintiff below, in an action for damages for personal injuries. The trial judge, in his charge to the jury, gave an instruction on the doctrine of last clear chance. Appellant contends this was error.

■■ Only recently we stated that, "The doctrine presupposes a perilous situation created or existing through the negligence of both the plaintiff and the defendant, but assumes that there was a time after such negligence had occurred when the defendant could, and the plaintiff could not, by the use of means available, avoid the accident. It is not applicable if the emergency is so sudden that there is no time to avoid the collision, for the defendant is not required to act instantaneously." [1] We think that what we said in the Dean case applies here.

Appellee was struck by one of appellant's streetcars as she was crossing Pennsylvania Avenue at 12th Street, Northwest, Washington, D. C., as she was on her way to work on the morning of January 9, 1945, at about 8:30 o'clock, a. m. She had alighted from a westbound streetcar at 12th Street for the purpose of crossing Pennsylvania Avenue to the south to reach a bus terminal in front of the Old Post Office Building. She had proceeded across the westbound track and had almost cleared the eastbound track when she was struck by an eastbound streetcar.

It is clear that the eastbound car entered the 12th Street intersection on the green light and that at some time when the car was in the intersection the light changed to amber and five seconds later to red. Appellee testified that she remained on the

---

[1] Dean v. Century Motors, Inc., et al., 1946, 81 U.S.App.D.C. 9. 154 F.2d 201. 202.

loading platform after alighting from the westbound car until she saw the light controlling east-west traffic change from green to amber, that she then waited until she heard the policeman's whistle and then started south across the tracks without further looking at the traffic light. She stated that she left the platform from the west end and walked south in about the center of the marked pedestrian lane or cross-walk. When she got to a point near the center of the eastbound track she was attracted to the approaching eastbound car by the clanging of its bell. She testified that the car was then about three and one-half feet from her. Her testimony following was that she turned and ran down the track in the same direction the car was going, to avoid being hit. A projecting ridge on the right front side of the car struck her in the right buttock. Other witnesses, who saw appellee just as she was hit, testified that at the time she was struck she was running south in the area prohibited to pedestrians, to the east of the marked crosswalk.

The testimony of the police officer on duty at the intersection, and of the motorman of the eastbound car, was that the eastbound car started passing a westbound car (the one from which appellee had alighted and which also proceeded into the intersection on the green light), at some point near the center of the intersection.[2] The motorman testified that this westbound car obstructed his view of the westbound track where appellee was crossing, and that she was about ten feet away when he first saw her. The police officer, who was standing just south of the eastbound track near the pedestrian cross-walk on the east side of 12th Street, testified that he did not see appellee until just as she was struck by the car. Witness Bayless, who was crossing Pennsylvania Avenue in a northerly direction on the east side of 12th Street, testified that just before she reached the safety zone at the south of the east bound track she saw the eastbound car approaching and waited in the safety zone for it to pass,

and that she did not see appellee until just prior to the instant the car struck her.

The evidence establishes that the eastbound streetcar was traveling at a speed of from ten to twelve miles per hour, and that the motorman, upon seeing the appellee in her perilous position, exercised every means available to him to avoid the accident by sounding his warning gong and applying the emergency brakes.

■ As in the Dean case, we do not here find any "evidence tending to show that" the motorman "saw, or in the exercise of reasonable care and prudence should have seen" the appellee in sufficient time to avert the accident by the use of means available to do so. Accordingly, the trial court committed reversible error in instructing the jury on the applicability of the last clear chance doctrine. We recognize the "oblivious to danger" aspect of this doctrine, but find no occasion for its application here.

We find nothing in the record to support appellee's contention that appellant is estopped from objecting to the court's instruction on this doctrine under our holding in Washington Ry. and Elec. Co. v. Upperman.[3] We think the cases are clearly distinguishable.

Reversed.

EDGERTON, Associate Justice (dissenting).

I think the judgment should be affirmed. Since appellant offered no objection, at the trial, to the court's charge concerning the last clear chance, its correctness is not before us. Yet the last clear chance doctrine is involved in the question that is before us. That question is whether the District Court should have granted appellant's motion for a directed verdict. I think the court rightly denied the motion.

There was substantial evidence, essential parts of which are not mentioned in the opinion of this court, that the accident was caused by the negligence of the operator of the eastbound streetcar which struck ap-

---

[2] Appellee's testimony as to the position of this westbound car at the time she left the platform is of no value. At one point she said that it had departed and had cleared the intersection, while at another point she said that she did not remember just where it was.

[3] 47 App.D.C. 219, 227.

pellee. Though there was evidence that appellee was guilty of contributory negligence, her negligence, like that of the operator, was a question for the jury. Moreover I think she was entitled to have the case submitted to the jury, as it was, on the theory of the last clear chance. Schear v. Ludwig, 79 U.S.App.D.C. 95, 143 F.2d 20. For there was substantial evidence that the accident was caused by negligent delay on the part of the operator in applying his brakes after he knew or should have known of appellee's danger and her obliviousness to it.

As the court states, the eastbound and westbound cars started passing each other near the center of the intersection and the eastbound car, which struck appellee, was then traveling at 10 to 12 miles an hour. There was evidence that the westbound car was traveling at about 10 miles an hour. If the speed of each was 10 miles an hour the two passed each other at the rate of 20 miles an hour or 29⅓ feet a second. At that rate, about 1½ seconds were required for the front of the eastbound car to pass the entire westbound car, since it was 44 feet long. During that time the eastbound car traveled, at 10 miles per hour or 14⅔ feet a second, about 22 feet. Since the space between the crosswalks was 70 feet and the cars began to pass each other near the middle of this space, it follows that the front of the eastbound car was about 13 feet (35 minus 22) west of the east crosswalk when the westbound car ceased to obstruct the eastbound operator's view of any part of the street ahead.

Appellee was about 4 feet *east* of the east crosswalk when she was struck. The crosswalk was 20 feet wide. If, as several witnesses testified, appellee was running south across the car tracks, and if the rest of the above testimony is true, *the eastbound car was about 37 feet* (13 plus 20 plus 4) *west of appellee when she became fully visible to its operator.* The car could be stopped in 17 feet.

The jury were entitled to believe the above testimony. To believe it is to accept the italicized conclusion, since that conclusion follows from it arithmetically. Once that conclusion is accepted, there is ample evidence that the operator saw or should have seen appellee in time to avert the accident. The court rejects the italicized conclusion, and therefore reverses the judgment. The court assumes the truth of the operator's testimony that the westbound car prevented him from seeing appellee until he was only *10 feet* away from her; despite the fact that the operator contradicted his own testimony, in effect, by conceding that he passed the front end of the westbound car at about the middle of the street intersection and that the lengths and speeds of the cars were as stated above, and yet asserting that he did not pass the rear end of the westbound car until he was in the center of the crosswalk.

The evidence supports an inference that the eastbound operator did not apply his brakes until he had traveled 46 feet, which is more than a car-length, after appellee became fully visible to him.[1] If the car was going 10 miles per hour or 14⅔ feet per second, this means a delay of more than three seconds in applying brakes. If, as the jury might find, appellee's obliviousness to danger was reasonably apparent (from her running toward the car's path) as soon as she could be seen, any such delay was plain-

---

[1] According to testimony based on actual measurement, the car did not stop until its front was 30 feet east of the crosswalk. If it was traveling at 10 miles an hour its "braking distance" was about 17 feet, i.e. it could be stopped within 17 feet after brakes were applied. This means they were not applied until the car was some 13 feet east of the crosswalk and consequently 9 feet east of the point where appellee had already been struck. Since the crosswalk was 20 feet wide, if the car was 13 feet west of the crosswalk when appellee became fully visible to the operator the car trav-

eled some 46 feet (13 plus 20 plus 13) between that time and the time when the operator applied his brakes.

The operator himself admitted that the car did not stop until it had traveled 15 feet after striking appellee. This amounted to an admission that he did not apply his brakes until he was within 2 feet of her. If, as the jury might find, she was 4 feet east of the crosswalk at that time, the car had then traveled 35 feet (13 plus 20 plus 2), or 2½ seconds, from the point 13 feet west of the crosswalk at which appellee became fully visible.

ly negligence. It is an understatement to say that the jury might reasonably think it negligence. The operator should have been ready to apply brakes almost instantly, for appellant's rules required him to have his foot on the brake pedal when he was passing another car. Three seconds, during which the operator is shown by substantial evidence to have done nothing, is the time it takes an automobile traveling at 40 miles an hour to go 176 feet. Obviously any normal driver begins using his brakes in far less time than that after occasion arises.[2]

If the operator was negligent in not sooner applying brakes when appellee's obliviousness to her peril was reasonably apparent, the last clear chance doctrine applies, provided there was evidence that a reasonably prompt application of brakes would have avoided the accident. There was such evidence. Several witnesses testified that appellee was running south across the track. In that case, since she was nearly out (south) of the car's path when she was struck by the south edge of the car, the car would apparently have passed her without touching her if brakes had been applied even a small fraction of a second sooner than they actually were applied, and nearly three seconds later than the moment at which appellee became fully visible.[3]

Though appellee testified that she was running east, and that the motorman was "pushing his brakes" before the car struck her, the jury were entitled to find, on the basis of the contrary evidence, that she was running south and that the car struck her before brakes were applied. Alamo v. Del Rosario, 69 App.D.C. 47, 98 F.2d 328. Even if her testimony were accepted as correct, the verdict would still stand. Since she did not see the car until it was within about 3½ feet of her the brakes might, consistently with her testimony, have been first applied when the car with within about 4 feet of her. That would mean a delay of some 33 feet, or more than two seconds, in applying the brakes.

The Supreme Court has repeatedly reversed appellate courts that overturned jury verdicts supported by evidence as this court is doing in this case. In a recent case of this sort the Supreme Court said: "The choice of conflicting versions of the way the accident happened, the decision as to which witness was telling the truth, the inferences to be drawn from uncontroverted as well as controverted facts, are questions for the jury. * * * Once there is a reasonable basis in the record for concluding that there was negligence which caused the injury, it is irrelevant that fair-minded men might reach a different conclusion. For then it would be an invasion of the jury's function for an appellate court to draw contrary inferences or to conclude that a different conclusion would be more reasonable. * * * And where, as here, the case turns on controverted facts and the credibility of witnesses, the case is peculiarly one for the jury." Ellis v. Union Pacific Railroad Co., 329 U.S. 649, 653, 67 S.Ct. 598, 600. This court's disregard of these principles in the present case goes to the authority of the Supreme Court as well as the integrity of the jury system.

---

[2] "Complex reaction time," in which an operator is required to make the appropriate physical movements in response to a variety of signals appearing at random intervals, has been found to average, under laboratory conditions, about 0.60 second. In an "actual driving situation * * * the average reaction time is likely to be around 0.75 second. The average driver's reaction time is, then, actually a split second!" American Automobile Ass'n, The Driver, p. 24 (1944). At 10 miles per hour, this means about 11 feet.

[3] Even if, as appellee testified, she was not crossing the track but was running east along it, the operator could have delayed more than a second in applying brakes and still have avoided the accident. For if brakes had been applied when appellee became fully visible and the car was 13 feet west of the crosswalk, it would have stopped some 20 feet before it reached the point where appellee was struck (13 plus 20, the width of the crosswalk, plus 4, appellee's distance east of the crosswalk, minus 17, the braking distance).