158

RODOLFO ROSADO ET UX., ETC., Plaintiffs and Appellees, *v.*
FAUSTINO ROSARIO ALEJANDRINO AND THE HARTFORD
ACCIDENT AND INDEMNITY COMPANY, Defendants and
Appellants.

No. 9500.   Argued November 12, 1947.—Decided July 19, 1948.

James R. Beverley, José López Baralt and R. Rodríguez Lebrón for appellants. Eduardo Cuchí Coll for appellees.

MR. JUSTICE DE JESÚS delivered the opinion of the Court in which MR. JUSTICE SNYDER concurs.

Angel Luis Rosado, a minor, represented by his parents, to whom we shall hereinafter refer as "the appellee", obtained judgment for damages in the amount of $2,000 against appellant Faustino Rosario Alejandrino, who caused the damages, and against the Hartford Accident and Indemnity Company, as insurer.

The evidence was contradictory. That for the appellee may be summarized thus: On the day of the accident, September 19, 1945, the appellee was twelve years of age. On that day he went swimming to the Condado beach, accompanied by his brother Rodolfo, a year older. They left the beach about four o'clock in the afternoon. Rodolfo crossed the Nereidas Avenue from north to south, precisely in front of the former Knights of Columbus building occupied at that time by the United Services Organization club. He stopped on the southern side of the avenue waiting for appellee, who had remained on the other side, to cross over to him. At that time the streetcar, which was going towards San Juan, stopped in front of said building to take and discharge passengers. An automobile was running in the same direction. The automobile of Faustino Rosario, appellant herein, and whom we shall hereinafter call "the appellant" was going towards Santurce. After the automobile which was going

towards San Juan passed in front of the appellee, his brother called him to cross the avenue. Appellee looked to his right and to his left and upon seeing that no automobile was coming, immediately ran across towards his brother. Before reaching the southern side of the road he was hit by appellant's automobile which was being driven by him and was running at a speed of fifty miles per hour, according to witness Diego Cuevas Hernández, motorman of the streetcar mentioned above. By reason of the collision between the automobile and appellee the latter was thrown against the railway tracks. Fortunately the streetcar was just starting and stopped without causing further damage.

As to the injuries received, Dr. Llobet testified that the boy had the total incapacity of his arm and that he had advised an amputation because by covering the stump with a a piece of the skin it would cure rapidly.

Appellant's version shows, in brief, the following: that he was driving his automobile towards Santurce along Nereidas Avenue running partly over the railway tracks of the streetcar which was San Juan bound. Another automobile was running along the avenue in the same direction as the streetcar. As appellant approached the automobile which was going towards San Juan he abandoned the railway tracks to let the streetcar go by. At that moment, as appellant was about to pass the other automobile, a small boy came out running from behind the latter towards the tracks. Appellant testified that he saw the boy for the first time at a distance of thirty feet; later he rectified and said at a distance of twenty-five feet; that his automobile was running at twenty-five or thirty miles per hour but later, on cross examination, he stated that the speed was twenty-five to thirty kilometers, that is, from fifteen and five-eighths to eighteen and three-fourth miles and that the brakes were in excellent condition.

■■ The primary question for decision is what was the proximate cause of the accident. If in the hypothesis that

appellant had driven at a reasonable speed, the accident could not have been avoided because when the appellee started to cross the avenue the automobile was already so near him that it was impossible to stop it before running over him, we must conclude that the proximate cause of the accident was not the alleged excessive speed, but the lack of foresight of the appellee in attempting to cross under such circumstances.

The record discloses the essential fact which will shed light in order to determine what was the proximate cause of the accident. That fact is the distance between the automobile and the place of the accident when the appellee started to cross the avenue. It seems clear that this should be the decisive point when, as in this case, the accident took place in a straight stretch of road with nothing to obstruct the view. But in other cases, for example, when the place of the accident is a curve, the test is the distance at which plaintiff could have been seen by the defendant and not the distance at which the automobile was when the plaintiff began to cross. As to this point appellant testified that he saw when the appellee started to cross and that his automobile was then at a distance of thirty feet, but he immediately corrected by saying that the distance was twenty-five feet. The appellee did not offer any evidence tending to show how far from the place of the accident the automobile was when he abandoned the place of safety where he was in order to cross the avenue. Under these circumstances we shall accept that part of appellant's testimony most beneficial to the appellee, that is, that the automobile was at a distance of thirty feet when he started to cross the avenue. Having established this fact, it is easy to determine the speed at which the automobile should have been running in order to be able to bring it to a stop within that distance, with brakes in excellent condition, as appellant testified.

There are charts scientifically prepared which have been accepted by the courts, textwriters and official bureaus by which one may determine the distance which an automobile

travels from the time that the driver receives the impression of danger until he actually stops by applying the brakes, supposing they are in good condition.[1]

From the chart copied in the well-known text Blashfield's Cyclopedia of Automobile Law and Practice, Permanent Edition, Vol. 9, page 706,[2] we took the following: that the average driver reacts to a warning in ¾ of a second; that an automobile running at ten miles per hour travels 14.5 feet per second; that in the ¾ of a second which the driver takes to react, the automobile travels 11 feet; that from the time the brakes are applied—assuming they are in excellent condition—the automobile travels 4.5 feet, that is, a distance of 15.5 feet from the time the driver sees the danger until the car is brought to a full stop.[3]

Let us suppose that appellant's automobile was running at a speed of 30 kilometers per hour, equivalent to 18.64 miles. Applying the above chart we have that during those ¾ of a second during which appellant took to react, his automobile travelled a distance of 20.55 feet and from the time he applied the brakes until he stopped the automobile, it travelled 16.15 feet, that is, a total distance of 36.68 feet.

Even if appellant was travelling at a speed of 18.64 miles—which we deem reasonable [4]—the accident would have

---

[1] Upon examining this case we found that none of the parties cited the charts in question. Before rendering judgment we heard the parties as to the reliability of said tables. Both parties filed lengthy briefs.

[2] This chart has been applied, among others, in the following cases: *Magnolia Petroleum Co.* v. *Saunders*, 104 S.W. 2d 1062; *Missouri Pac. R. Co.* v. *Hancock*, 113 S.W. 2d 489 and *Capital Transit Co.* v. *Grimes*, 164 F. 2d 718, dissenting opinion of Judge Edgerton.

[3] Of course, these charts are computed on the average driver. We should accept them as approximate.

[4] We say that it is reasonable taking into account that the stretch between the end of Dos Hermanos Bridge and the place of the accident was a straight piece of road; that the only building on the right-hand side was the United Services Organization Club in front of which the accident took place and that the only building on the left-hand side is a house near the end of the bridge. Under these circumstances the driver of the automobile was not bound to expect children or other persons to cross the avenue at that place.

been unavoidable because the vehicle would have had to travel 36.68 feet and the distance from the appellee was only 30 feet. Consequently, assuming that it was running at 50 miles per hour as found by the lower court, such a speed could not have been the proximate cause of the accident.

The appellee cites the chart used by "New York Bureau of Motor Vehicles" which is copied in 19–20 Huddy Cyclopedia of Automobile Law 1948 16th Cumulative Supplement, pages 6 and 7, where it is said that the time within which a driver reacts to danger may be estimated at approximately ½ of a second. The other charts with which we are acquainted [5] fix that time in ¾ of a second. Even if appellee chose the table most favorable to his contention, in order to bring to a stop a vehicle which is running at 18.64 miles (30 kilometers) per hour, it would have to cover, pursuant to said chart, a distance of 32 feet according to appellee's computation, and we have already seen that the distance between the appellant and appellee when the latter started to cross the avenue was 30 feet. We are of the opinion, therefore, that this is an unfortunate case of which appellant is not responsible, the proximate cause of it being the negligent act of appellee in trying to cross the avenue when the automobile was so near. De García v. Figueroa & Gautier, 52 P.R.R. 869, affirmed in De García et al. v. Figueroa & Gautier et al., 102 F. 2d 148, and Heirs of Ortíz v. Ramírez, 68 P.R.R. 462.

The judgment of the lower court should be reversed and since this Court is in a position to render the judgment that should have been rendered by the district court, the complaint is dismissed with costs on the plaintiffs.

Mr. Justice Marrero did not participate herein.

---

Opinion of MR. JUSTICE TODD, JR. in which MR. CHIEF JUSTICE TRAVIESO concurs.

[5] 1. Sportsmanlike Driving Series, The Driver-American Automobile Association, page 30.

2. War Department Technical Manual TM 21-305. Drivers Manual (1944) page 26.

164

■■ It is a well-settled rule in this Court that we shall not reverse the judgment when the only error charged is directed against the weighing of the evidence, unless it is shown that the lower court committed manifest error in its weighing or that it acted with passion, prejudice or bias. In order for said manifest error to exist the uncontroverted facts should reveal that there is no *possible ground* to support the judgment. *Matos* v. *Pabón*, 63 P.R.R. 855; *Heirs of Ortiz* v. *Ramírez*, 68 P.R.R. 462.

■ Appellants have assigned two errors: 1st., in weighing the evidence and 2d, in not admitting certain evidence of the defendants to impeach the veracity of plaintiffs' witness. Since the second assignment lacks merit, inasmuch as according to the record, the appellants did not lay any foundation to impeach said witness, pursuant to § 159 of the Law of Evidence, Code of Civil Procedure, § 521, the appeal is restricted to the first assignment.

After making a summary of the testimony of the witnesses of the case, the lower court stated the following:

"After making an analysis of the evidence as a whole, we reach the conclusion that the accident arose as a consequence of the excessive speed at which Faustino Rosario Alejandrino, defendant herein, was driving his automobile through a residential section where the road was straight and ample, at a time when vehicles were running in an opposite direction, to the left side of the defendant, at a time when other vehicles were running in his same direction and at a time when the street car was running on the left-hand side of the road and to the right of the vehicle of Rosario Alejandrino. At the time of the accident the latter was driving his vehicle through two lines of vehicles, that is, between those that were coming from an opposite direction and the streetcar. Under these circumstances the prudent, wise and advisable thing to do would have been to stop and let the streetcar pass. Far from doing this he, who up to the time of the accident had been running over that part of the road having the tracks, swerved to the left in order to leave the way clear for the streetcar and continued travelling at a high speed without blowing the horn or giving any warning

whatsoever. The speed, according to his own testimony was 25 to 30 kilometers per hour; according to Cuevas Hernández it was 50 miles per hour, according to Angelina Hernández 'fast'. They all agreed that after the accident Rosario Alejandrino, the defendant, stopped his vehicle towards the center of the street-car; one witness testified that at about a distance of thirty-five feet, while another testified that about 12 or 15 meters and defendant himself that he stopped immediately. Another witness remembers that the accident took place long before reaching the streetcar and this also shows that he was running at quite some speed. Otherwise he could have stopped immediately.

"It is true that this boy of twelve years of age acted with the foolishness that is common with minor children. If certain vehicles were coming towards San Juan, while others were going towards Santurce and in addition to all this the streetcar was occupying part of the left-hand side of the road, it would have been logic not to cross the avenue at that time. See: *Franco* v. *Sierra,* 58 P.R.R. 216. Nevertheless, one can not expect from a child of tender years the maturity and judgment of older people.

"\*     \*     \*     \*     \*     \*     \*

"In our opinion this is not the case of a child of tender age who deliberately places himself in front of a moving vehicle. *Aguayo* v. *Municipality of San Juan,* 35 P.R.R. 390, and 65 A.L.R. 203. This is the case of a child who although he attempts to cross the avenue at a time when vehicles are running both ways, the automobile which caused the accident and ran over the child was running at an unlawful speed without taking the due precaution and without giving warning.

"We say that the vehicle of the defendant Rosario Alejandrino was running at an unlawful speed because he admits himself that he was running at about 25 or 30 kilometers per hour; and others say that he was running at a greater speed. Pursuant to Act No. 55 of April 27, 1942, page 526, 'To regulate the use of motor vehicles in Puerto Rico':

" 'The speed of motor vehicles shall at all times be regulated with due care, and with due regard to the width, amount of traffic, use, and condition of the highway, and the driving . . . within the urban zone of a municipality, exceeding twenty-four (24) kilometers an hour, shall be prima facie evidence that it was being driven without due care." Section 11, page 560.

"It is true that this statutory provision was modified by § 15 of Act No. 279 of April 5, 1946, page 598, but this law was not in force at the time that the accident took place and the defendant cannot invoke its provisions. The evidence shows prima facie at least that the vehicle was negligently driven and it has not succeeded, in our opinion, to destroy this presumption."

In view of these conclusions of fact and of law of the trial court, it is sought to apply on appeal, for the first time in this jurisdiction, certain charts published in Blashfield and in others, by virtue of which it may be determined, through certain experiments, the distance mathematically calculated, at which a vehicle should stop according to the speed it is travelling when the brakes are applied. Giving to these charts their full value and without accepting that we should adopt them as applicable to cases of this nature,[1] (the precedent that would be established by applying them to the case at bar will undoubtedly be used in future cases) I consider that the facts which the lower court considered proved and the conclusion at which it arrived do not justify the reversal of its judgment by using said chart on the testimony of the defendant Faustino Rosario. [6] The lower court was justified in not believing his testimony for it was completely contradictory. Sometimes he says that he saw the child for the first time at a distance of thirty feet and later corrected himself and says he saw him at twenty-five feet; that his automobile was travelling from twenty-five to thirty *miles* and then on cross examination he says that the speed was from twenty-five to thirty *kilometers* per hour. From another part of his testimony it is worth while to copy the following: "Q. Do you mean to say that you hit the child in the front part of his body? A. *He hit me, my car had already stopped.*" So that, according to defendant's version

---

[1] In the three cases cited in footnote (2) of the opinion rendered by Mr. Justice De Jesús, where the charts are mentioned, there were dissenting votes and in two of them dissenting opinions on the ground that the conclusions of fact which were considered proved by the jury had not been upheld.

it was not he who hit the child with the running automobile but that he had already *stopped* and it was the child who struck the automobile.

In view of all these contradictions, how is it possible to accept as certain any of the appreciations made by the defendant as to the distance when he saw the child, the speed at which he was running, the condition of the brakes of his vehicle, etc., and use them as a reliable basis to apply the charts above referred to?

Furthermore, the lower court did not believe the testimony of the defendant. Neither did it have before its consideration, for it was not raised by the defendant, the question of whether, according to the aforesaid charts, the defendant Faustino Rosario Alejandrino could have stopped his vehicle before running over the child. If this question had been submitted to the court, the plaintiff might have possibly had the opportunity to show that the brakes of defendant's automobile were not in good condition and he could have rebutted with material evidence, the applicability of the charts to the facts herein. This is a question, which, in my opinion should be raised and decided, at first instance, before the lower court and not by this Court at its own initiative, on appeal.

The judgment should be affirmed.